IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 1:20-CV-00392-FDW

| | |
|---|---|
| JAMES TREADWAY,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, *acting Commissioner of Social Security*[1],<br><br>    Defendant. | ORDER |

THIS MATTER is before the Court on Plaintiff James Treadway's ("**Plaintiff**") Motion for Summary Judgment, (Doc. No. 14), filed August 12, 2021, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("**Commissioner**") Motion for Summary Judgment, (Doc. No. 17), filed October 8, 2021. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Commissioner's Motion for Summary Judgment, (Doc. No. 17), is GRANTED; Plaintiff's Motion for Summary Judgment, (Doc. No. 14), is DENIED; and the decision of the Administrative Law Judge ("**ALJ**") is AFFIRMED.

## I. BACKGROUND

Plaintiff filed an application for Title II benefits on October 5, 2017. (Doc. No. 10-1, p. 176). Plaintiff initially alleged disability beginning January 15, 2011, but later amended his

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disability onset date to August 28, 2017.  Id. at 23.  The Social Security Administration ("**SSA**") denied Plaintiff's application initially on November 9, 2017, id. at 115, and upon reconsideration on July 30, 2018, id. at 126.  Thereafter, Plaintiff requested a hearing.  Id. at 133.  The hearing was held on December 17, 2019, id. at 23, and the ALJ issued an unfavorable decision on January 10, 2020, id. at 5.  The Appeals Council affirmed the ALJ's decision on October 30, 2020.  Id.

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act (the "**Act**").  At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 28, 2017.  Id. at 26.  At step two, the ALJ found Plaintiff to have the following severe impairments: "[r]esiduals of a gunshot wound to the right leg, residuals of a cerebrovascular accident, diabetes, obesity, [and] depression."  Id.  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments (the "**Listings**") in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 27.  The ALJ then determined Plaintiff had the Residual Functional Capacity (the "**RFC**") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c).  The RFC provides, in pertinent part:

> the claimant should perform no crawling, can occasionally climb ladders, ropes and scaffolds, frequently climb ramps and stairs, and frequently stoop, kneel, and crouch. The claimant can tolerate occasional exposure to hazards such as unprotected heights. The claimant remains able to understand, remember and carry out simple instructions and can sustain concentration and persistence on those types of tasks for two hour periods throughout an eight-hour workday, and is able to adapt to routine changes in a work setting.

Id. at 29.  At step four, the ALJ found Plaintiff's past relevant work exceeded the RFC.  Id. at 34. At step five, however, the Vocational Expert (the "**VE**") testified, in response to a hypothetical factoring in Plaintiff's age, education, work experience, and RFC, that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  Id. at 35.  As a result, the

ALJ concluded Plaintiff was not disabled, as defined in the Act, from June 1, 2016, through the date of the ALJ's decision.  Id.

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g).  In his appeal, Plaintiff argues the ALJ committed harmful error, as set forth below.

## II.     STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits.  When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.  42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).  A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance."  Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted).  We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision.  Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [his physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Plaintiff first argues the ALJ's decision was so constitutionally defective as to warrant remand. In addition, Plaintiff asserts the following four assignments of error within the ALJ's decision: (1) the ALJ failed to properly consider the testimony of consultative examining psychologist Dr. Michael Fiore, id. at 15-20; (2) the ALJ failed to support his assessment of the stooping, kneeling, and crouching limitations in Plaintiff's RFC with substantial evidence, id. at 20-22; (3) the ALJ failed to properly account for the effects of Plaintiff's hypertension, obesity,

and foot pain in determining Plaintiff's RFC, id. at 23-25; and (4) the ALJ gave inadequate consideration to the testimony of Plaintiff's non-medical sources, id. at 25-27. For the reasons stated below, this Court finds none of Plaintiff's assignments of error warrants remand.

A. **Constitutionality**

The Court first finds the Commissioner's final decision was not constitutionally defective. The Supreme Court recently rejected the proposition that unconstitutional tenure protection for the head of an agency, without more, voids any agency action. See Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021). Specifically, the Supreme Court explained, "the unlawfulness of [a] removal provision does not strip [a federal official] of the power to undertake the other responsibilities of his office." Id. at 1788 n.23. After Collins, "courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand" absent some causal nexus to the ALJ's decision not to find a particular claimant disabled. Katrina R. v. Comm'r of Soc. Sec., 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (collecting cases); see also Juliana Jolean A. v. Kijakazi, 5:20-CV-1268, 2022 WL 595361, at *4 (N.D.N.Y. Feb. 28, 2022) (collecting cases).

Here, Plaintiff argues the Commissioner's removal protections, codified at 42 U.S.C. § 902(a)(3), are unconstitutional and remand is warranted because "SSA's ALJs had no authority to decide this case." (Doc. No. 15, at 13). Plaintiff, however, has made no showing that his case would have been decided differently were it not for the allegedly unconstitutional tenure protection. As Plaintiff has failed to offer evidence to show a nexus between the allegedly unconstitutional removal restriction and the denial of his application for disability benefits, the final decision of the ALJ is not constitutionally defective.

B. **Dr. Fiore's Testimony**

Plaintiff next contends the ALJ did not give proper consideration to the testimony of psychologist Dr. Michael Fiore, who acted as a consultative examiner. Specifically, Plaintiff argues the ALJ erred by substituting his own judgment for Dr. Fiore's, failing to articulate the supportability or consistency of Dr. Fiore's observations, and failing to provide adequate reasoning for finding opinions of non-examining record reviewers more persuasive than Dr. Fiore's.

As described above, it is the task of the ALJ, not this Court, to weigh the evidence; the role of this Court is limited to ensuring that each of the ALJ's findings is supported by more than a scintilla of evidence. See Hays, 907 F.3d at 1456; Pearson, 810 F.3d at 207. Plaintiff correctly notes that, in assigning weight to a medical opinion submitted as evidence for or against a claim filed after March 27, 2017, the ALJ is principally tasked with weighing the supportability and consistency of the opinion. See 20 C.F.R. §§ 404.1520c(c), 416.920c(c); 82 Fed. Reg. 5857 ("[The SSA is] adopting our proposal to consider supportability and consistency as the two most important factors when we evaluate the persuasiveness of medical opinions."). Supportability is "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation," and consistency is "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." 82 Fed. Reg. 5853.

In contrast to Plaintiff's assertions, however, the Court finds the ALJ considered both the supportability and consistency of Dr. Fiore's opinion. The ALJ considered the supportability of Dr. Fiore's conclusions by comparing them with Dr. Fiore's observations and supporting explanation. See (Doc. No. 10-1, pp. 31, 34). Similarly, the ALJ considered the consistency of Dr. Fiore's conclusions by comparing them with the other evidence of record, including the testimony of consultative examiner Dr. Jonathan Jackson. Id. at 33-34. Thus, the ALJ did not

substitute his own judgment for Dr. Fiore's, sufficiently articulated the supportability and consistency of Dr. Fiore's observations, and provided adequate reasoning for his assignment of weight to Dr. Fiore's opinion.[2] Based on the foregoing, the Court finds the ALJ's credibility determination was supported by substantial evidence; Therefore, the Court finds no error in the ALJ's consideration of Dr. Fiore's testimony.

### C. Plaintiff's Ability to Stoop, Kneel, and Crouch

Plaintiff next assigns error to the ALJ's finding that Plaintiff could "frequently stoop, kneel, and crouch." Dr. Jackson assessed mild to moderate limitations in Plaintiff's capacity to lift, carry, bend, and squat, but the ALJ found the terms "mild" and "moderate," without further elaboration, too vague to be persuasive. Id. at 34. Consequently, Plaintiff assigns the following errors to the ALJ's finding that that Plaintiff could "frequently stoop, kneel, and crouch": (1) that such finding was unsupported by substantial evidence logically linked to the conclusion (Doc. No. 15, p. 21-22), and (2) that the ALJ "failed to fully and fairly develop the record" by declining to recontact Dr. Jackson to clarify the terms "mild" and "moderate," id. at 22.[3] The Court addresses each in turn.

---

[2] To the extent Plaintiff relies on the case law cited in his brief to support his first assignment of error, he is mistaken. Instead, the cases on which Plaintiff relies to assert the ALJ overstepped his authority are inapposite. Plaintiff rightly reads Arakas v. Comm'r of Soc. Sec. to stand for the proposition that "[a]n ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings." 983 F.3d 83, 108 (4th Cir. 2020). But in Arakas, the ALJ had not merely assigned different weights to different medical opinions, as here, but gone so far as to devise his own interpretation of an MRI in place of a physician's. Id. at 109. Other cases on which Plaintiff relies involved ALJs drawing conclusions with no evidentiary basis whatsoever. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (reversing ALJ who proclaimed treatment record "conservative" without medical support); Grimmett v. Heckler, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (reversing ALJ who, "[w]ithout seeking other expert opinion . . . chose to discredit the psychiatric and psychological evidence" based on his own intuition). Finally, insofar as Plaintiff relies on cases applying the "treating physician rule" and other cases premised on any "hierarchy of medical sources" which would require specific reasons for an ALJ to be unpersuaded by any particular consultative examiner, the Court reiterates that the SSA has deliberately moved away from any such hierarchy. These rules are consequently inapplicable to applications filed after March 27, 2017. See 82 Fed. Reg. 5853; Wheeler v. Kijakazi, No. 1:20-cv-00388-MOC-WCM, 2021 WL 6335329, at *2 (W.D.N.C. Dec. 6, 2021).

[3] Plaintiff does not assign error to the ALJ's determination that Dr. Jackson's assessment was unpersuasive. See (Doc. No. 15, p. 21). However, the Commissioner devotes most of her arguments with respect to this assignment of error to emphasizing to the Court that the ALJ's weighing of Dr. Jackson's evidence is not for this Court to reweigh.

With respect to Plaintiff's first argument, the Court finds the ALJ considered and supported his decision with substantial evidence relevant to Plaintiff's ability to stoop, kneel, and crouch. The ALJ extensively cited to Plaintiff's statements concerning his pain along with the findings relating to Plaintiff's lower extremities and mobility made for treatment at Park Ridge Health and Hot Springs Health as well as during Dr. Jackson's consultative examination. (Doc. No. 10-1, pp. 26-27).

Although the ALJ did not separately and expressly link this evidence to a finding of RFC to frequently stoop, kneel, and crouch, remand is not required on this basis alone. The Fourth Circuit has declined to adopt "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio, 780 F.3d at 636. Instead, the Fourth Circuit has explained that remand may be warranted "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d. Cir. 2013) (per curiam)). Lack of a function-by-function analysis, therefore, is not, on its own, sufficient to warrant remand. Moreover, on appeal, Plaintiff must bear "the burden of demonstrating that the outcome would have been different but for the error." James v. Astrue, NO. 0:07–0749–MBS, 2008 WL 4283418, at *10 (D.S.C. Sept. 18, 2008).

Here, Plaintiff has evidently contested his RFC to stoop, kneel, and crouch, (Doc. No. 15, p. 21), but Plaintiff has not shown that the functions are relevant. The Fourth Circuit, in applying Mascio, recently explained that a function is relevant if it is determinative of the claimant's

---

The Court agrees with the Commissioner on this point but focuses its analysis on the assignments of error Plaintiff clearly raises.

disability status.  See Dowling v. Comm'r of Soc. Sec'y Admin., 986 F.3d 377, 388-89 (4th Cir. 2021) (remanding because the omitted function was "critically relevant to determining [the claimant's] disability status").  Plaintiff, however, fails to satisfactorily explain the relevance of the functions at issue – that is, how further evidence would have shown an inability to stoop, kneel, or crouch that, in turn, would have affected his final disability determination.

Furthermore, to the extent the ALJ committed error by failing to perform an explicit function-by-function analysis, such error was harmless.  Indeed, Defendant argues – and Plaintiff does not dispute – that the ALJ's disability determination would not have changed even after a function-by-function analysis incorporating stooping, kneeling, and crouching because two out of the three jobs identified by the ALJ as jobs Plaintiff could perform that exist in significant numbers in the national economy, hand packager and machine feeder, do not require stooping, kneeling, or crouching.  See U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 243, 316, Identification Key at ID-2 (1993).  It is well settled that a claimant will not be found disabled unless the ALJ finds that he could perform no jobs that exist in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1505(a), 416.905(a).  Accordingly, the ALJ's failure to perform an explicit function-by-function analysis for the functions stooping, kneeling, and crouching, even if in error, would not change the ALJ's disability determination and was therefore harmless.  See Strauch v. Saul, No. 5:19-CV-00142-FDW, 2020 WL 6365461, at *5 (W.D.N.C. Oct. 29, 2020) ("error is harmless where the evidence would not have caused the ALJ to reach a different outcome."); Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result.").

Regarding the ALJ's alleged failure to fully and fairly develop the record, the Court again disagrees with Plaintiff. The Fourth Circuit has held that an ALJ has a duty to further develop the record only "when the evidence is inadequate" to make a finding as to disability. Cook v. Heckler, 783 F.3d 1168, 1173 (4th Cir. 1986). Where "[t]he ALJ had before him sufficient facts to determine the central issue of disability, the ALJ is not required to further develop the record." Scarberry, 52 F.3d 322, 1995 WL 238558, at *4 n.13 (4th Cir. 1995). For the reasons explained above, the ALJ had sufficient facts before him to determine the central issue of disability without recontacting Dr. Jackson. Accordingly, the Court finds no error in the ALJ's decision not to recontact Dr. Jackson. As such, the Court finds no error in the ALJ's determination that Plaintiff could frequently stoop, kneel, and crouch.

### D. Plaintiff's Hypertension, Obesity, and Pain

Plaintiff's third assignment of error also attempts to raise several issues, including: (1) the ALJ's lack of an express severity finding for Plaintiff's hypertension; (2) the ALJ's failure to expressly link Plaintiff's severe obesity to the work functions comprising his RFC; and (3) the ALJ's failure to expressly link Plaintiff's non-severe bilateral foot pain, in combination with other impairments, to his RFC. As a preliminary matter, the Court notes Plaintiff fails to point to any statutory or regulatory requirement or case law supporting its proposition that the ALJ must assign a severity rating to each impairment individually.

In any event, the ALJ's RFC determination was supported by substantial evidence that accounted for all three of the impairments raised in Plaintiff's brief. In contrast to Plaintiff's assertions, it was proper, and necessary, for the ALJ to consider several impairments in combination rather than discuss each individually. See, e.g., SSR 96-8p, 61 Fed. Reg. 34477 (Jul. 2., 1996) (mandating that ALJs consider "all of an individual's impairments, even those that are

not 'severe'" at step four because they may be material "in combination with limitations imposed by an individual's other impairments"). In making his RFC finding, the ALJ accounted for Plaintiff's obesity; foot pain, including Plaintiff's subjective statements regarding the pain in multiple contexts and methods of treatment; and symptoms relating to hypertension, including Plaintiff's blood pressure and methods of treatment. See (Doc. No. 10-1, pp. 29-31). The Court therefore finds no error in the ALJ's consideration of Plaintiff's hypertension, obesity, and foot pain.

### E. Evidence from Non-Medical Sources

Plaintiff's last assignment of error focuses on the ALJ's failure to expressly incorporate the testimony of Plaintiff's non-medical sources, including his friend, his neighbor, and his former teacher, into the Plaintiff's RFC. Although an ALJ is permitted to incorporate evidence from non-medical sources in making a disability determination, 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4), the SSA's regulations make clear that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" in his decisions. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Instead, when "[t]he Commissioner, through the ALJ and Appeals Council, state[s] that the whole record was considered . . ., absent evidence to the contrary, we take her at her word" because "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (internal quotations omitted). Here, the ALJ has properly explained that his RFC finding is based on "careful consideration of the entire record, and the Court finds no evidence to the contrary. (Doc. No. 10-1, p. 29). Accordingly, the Court finds no error in the ALJ's failure to expressly incorporate the testimony of Plaintiff's non-medical sources.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is not constitutionally defective, the ALJ applied the proper legal standards in his decision, and substantial evidence supports the ALJ's decision. Accordingly, Plaintiff's Motion for Summary Judgment, (Doc. No. 14), is DENIED; Defendant's Motion for Summary Judgment, (Doc. No. 17), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 31, 2022

Frank D. Whitney
United States District Judge